**LEW et al. v. J. MORRIS & CO., Inc., et al.**

**No. 677.**

District Court, E. D. New York.

April 7, 1942.

Victor M. Helfand, of New York City, for plaintiffs.

Albert T. Scharps, of New York City, for defendant.

GALSTON, District Judge.

This is a patent infringement suit involving patent No. 1,879,768, granted to Israel H. Shalomith, September 27, 1932, on an application filed March 1, 1930.

The invention relates to electric lamp sockets. The stated object was to provide a solderless attachment to permit quantity production of lamp sockets, particularly designed for Christmas tree lighting outfits. Of the five claims of the patent only Claims 4 and 5 are in issue. The usual defenses of invalidity and non-infringement are asserted.

Claims 4 and 5 read:

"4. In an electric socket having an insulated casing, a screw shell contact portion, a resilient tab terminal, extending from said portion bent to form a loop for receiving a wire adapted to clampingly retain the latter when assembled in the socket casing, an eyelet rivet formed with a split end, said split end being bent to provide a lug terminal extending transverse another wire for clampingly engaging and securing the latter to the rivet.

"5. In an electric lamp socket having an insulating casing, a screw shell contact portion formed with an inturned flange at one end thereof, a resilient tab terminal extending from said flange, said terminal being bent to provide a loop adapted to receive a conductor wire for clampingly retaining the latter when assembled in the socket casing, an eyelet rivet having a solderless lug terminal formed from a split end of said rivet, said split end being adapted to extend through the insulated covering of a stranded wire and between separate core portions of the wire strands and bent to clampingly engage the same."

These two claims do not substantially differ. Though Claim 4 describes the eyelet rivet as formed with a split end which is bent to provide a lug terminal, Claim 5 describes the eyelet rivet as having a solderless lug terminal formed from a split end of the rivet. Again Claim 4 limits the lug terminal as "extending transverse (sic!) another wire", whereas Claim 5 recites the split end "adapted to extend through the insulated covering of a stranded wire and between separate portions of the wire strands."

Although infringement is denied, it appears that the defendant's structure embodies every element of these claims, each of which functions in exactly the same way as do those of the patented structure. Nor can the defendant avoid infringement on the contention that it does not assemble in the combination, an eyelet which is pre-formed with a split end. The specification of the patent in suit does not limit the patented structure to an eyelet rivet with a pre-formed split end. The patentee said:

"The head or top end of 16b of said rivet 16 is adapted to contact with the base of the lamp and the bottom end of the eyelet rivet extending beyond the washer 18 and conductor strands 12a is split at 16d to provide oppositely extending clamping lugs, forming the terminals 14."

Certainly too, so far as function is concerned, it matters not one whit whether the eyelet has the split end before assembly or during the process of assembly. The defendant also urges as a ground of evasion the use of a second washer, that it, one on the interior of the shell bottom. It is possible that this second washer may add something to the patented structure, but it is certainly well understood in the patent law that the addition of such an element to a combination that embodies each and every element of the claim cannot avoid infringement.

However, the validity of the patent is another matter. One of the plaintiffs who is in the business of assembling electric light sockets admitted that the eyelet of the patent in suit and its appurtenant construction as a substitute for solder constitute the invention of the patent in suit.

He explained that in the soldering operation of the prior art, the operator often splashed acid on the insulation between the body of the screw shell and the center contact, with a resultant short circuit. This disadvantage was overcome by the elimination of the solder.

But the prior art gives abundant instruction in respect to elimination of solder in the production of a lamp socket. The patent to Recker, No. 1,387,907, issued August 16, 1921, is for a miniature lamp socket for Christmas trees. Recker avoided the use of solder by the use of an offsetting sleeve in the lamp socket. Though it is, of course, true that Recker does not disclose the specific means recited in Claims 4 and 5 in suit, for the Recker tab is not bent up against the side of the shell and clamped against the conductor wire by the casing but is separately bent on itself and clamped around the wire, and though the Recker eyelet terminal does not engage the conductor wire by lugs split from its end, nevertheless the structural differences are not great. If it be considered that the Shalomith construction is simpler, such simplicity would result not from inventive but mere mechanical skill.

Rothenberg patent No. 1,679,338, was issued July 31, 1928. This patent also relates to Christmas tree lighting fixtures and the objects of the inventors were to devise a socket composed of a minimum number of parts. In so doing they made a device consisting of a metal socket, a neck portion

bent around a wire in order to form an electrical contact therewith; a central eyelet having a wire connected therewith, and the eyelet electrically disconnected from the shell. The structure is very close indeed to that defined in the patent in suit. The claim of the patent reads:

"A lamp socket, consisting of a sheet metal socket member screw-threaded to receive a base lamp and having an end turned over around a conductor, a center contact in the form of an eyelet folded around a conductor, said socket and eyelet being held in position by insulating compound molded in place around the same."

It is true that there is no specific mention in this patent of the elimination of the use of solder, but on the other hand it does not appear from a reading of the patent, nor from any testimony offered in this suit, that solder would be required to assemble the Rothenberg lamp socket. The socket and eyelet of the Rothenberg construction are held in place by insulating compound. The Shalomith construction does not make that necessary.

Another patent of some importance is that to Paroubek, No. 1,790,483, issued January 27, 1931. This patent is also for a miniature electric lamp for Christmas trees. This lamp socket consists of a tubular body formed of insulating material such as porcelain, hard rubber or fiber. There is a flanged metallic ferule positioned therein adapted to receive the lamp. One side of the flange is positioned against the internal shoulder on the tubular body, and a section of insulation is placed against the short side of the flange. Insulated wires are positioned therein. It is true that this patent does not disclose a completely solderless socket. One of the conductors "is shown as having its end soldered or otherwise secured against the top surface of the flange 16, forming an electrical connection between the wire 18 and the ferule 15". No solder, however, is used with the other wire 19, which "has its

end positioned against the back of a section of insulating material 21, which section of insulating material fits snugly within the non-circular, counter-bore 12. A metallic rivet 22 is positioned at the center of the section 21 (i.e. of insulating material),[1] and has its shank extending through the section. If the wire 19 is formed of a plurality of strands, the shank is extended through the strands and riveted over to form an electrical connection between the wire 19 and the rivet 22." The patentees again, after this description, suggest that the rivet may be connected to the wire 19 in other manner, such as by soldering. Therefore, it may fairly be inferred from this patent, that soldering for the purposes indicated in the device is a matter of mechanic's choice. The plaintiffs point out that the Paroubek rivet is solid and has no split end to form lugs for the purpose of gripping the wire.

However, the art for incandescent lamp sockets discloses the possible use of solid or hollow rivets, either channeled or tubular, as in Seymour, patent No. 716,487. The use of a hollow rivet or eyelet so formed that the upper end is flanged over a center terminal is found in the patent to Mallett, No. 1,589,298, as well as in patent to Hadaway, No. 1,163,658.

█ It is only fair to the patent in suit to say that its detailed structure is not anticipated by any one patent of the prior art. Nevertheless the novelty of the structure defined in the claims in suit, whether tested by the rule of substantial contribution to the art or by the test suggested in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. ——, compels the conclusion that the selection of an eyelet for maintaining wires in position with the consequent elimination of a solder, was a choice of the mechanic rather than of the inventor.

Accordingly the bill will be dismissed. Simple findings of fact and conclusions of law will be filed concurrently with this opinion.

---

[1] Parenthesis mine.